Our next case is Longhorn HD LLC v. Unified Patents, LLC, 22-1361. Mr. Dardenne, you reserve five minutes of time for rebuttal, correct? That's correct, sir. Thank you. You may proceed. May it please the Court, Enrique Terralde from Fabricant, LLP, on behalf of Appellant Longhorn. The two primary issues in this appeal concern the Board's refusal to consider two types of arguments regarding entitlement to a provisional date. The first issue involves a misapplication of dynamic drinkware. It is a well-settled law that there are two separate requirements to show entitlement. The first requirement is that all subject matter relied upon to support a rejection must be carried over from the provisional to the alleged 102e reference. The second requirement is that at least one claim of each alleged 102e reference must have 112 written description support in the provisional. The Board refused to consider patent owner's argument on the carryover requirement. In the final written decision at Appendix 13 and 21, the Board takes the position that under dynamic drinkware, the proper comparison is between the claims of the Portnoy patent and the provisional applications. While acknowledging patent owner's carryover arguments on pages 17 to 22 of the patent owner response, the Board never conducts any analysis for the disclosure sufficient, for the sufficient disclosure carried over from the provisional application to the Portnoy reference. Can you tell me where in your blue brief you made this argument? Yes, Your Honor. I believe that we have this argument on the carryover, carryover arguments are in Appendix 13. No, no, your actual argument in the blue brief, not the appendix. I'm sorry, the opening brief 15 and 18, Your Honor. And so, for example, at Appendix 35 through 38, the Board addresses the limitation, quote, extracting network packets from said passing traffic. But this section contains no analysis for carried over disclosure from the provisional to the Portnoy reference. And the Board's failure to address this carryover requirement runs afoul of Ball Settled case law. For example, What is the argument in the brief? I'm sorry, I can't find it. You said page 16 and 17? 15. 15. 15 and 18, I believe, Your Honor. But that's addressed to the invalidity point, right? Starting at 15, that argument is addressed to the question of whether invalidity resolves the issue of whether something can be prior art. All of this falls under the, whether or not the 102E qualifies as prior art, Your Honor. And so, that's where we lay out. That's not the only argument that I see that you're making, right? Where's the alternative argument that I'm now, I think, hearing? Our intention, Your Honor, was to address the 102E qualification as prior art. Right. And so, for example, page 15, we laid out the standard. I apologize, Your Honor, if it wasn't quite fleshed out as to this carryover argument. But our intention was to address the 102E qualification as prior art, Your Honor. And so, this section contains no analysis. And the section that I'm addressing is Appendix 35 through 38, where the Board addresses the limitation extracting network packets from said passing traffic. This section contains no analysis for carried over disclosure from the provisional to the Portnoy 102E or alleged 102E reference. And so, the Board's failure to address the carryover argument runs afoul of well-settled case law. For example, Dynamic Drinkware references NRA Wertheim at 539. And in that opinion, Judge Rich holds that an application is entitled, quote, entitled to the filing date of the parent application as to all subject matter carried over into it from the parent application for purposes of utilizing the patent disclosure as evidence to defeat another's right to a patent. That's the first carryover requirement. The second carryover, the second requirement, which is the claimed invention requirement, is also described by Judge Rich, where he states, quote, the test further includes the requirement that an application, the filing date of which is needed to make a rejection, must disclose, pursuant to sections 120 and 112, the invention claimed in the reference patent. So, now, I don't believe that it was this Court's intention in Dynamic Drinkware to write off Judge Rich's carryover requirement to show entitlement. And it seems that this carryover requirement was not in dispute during that appeal, and that's the reason why it wasn't referenced in the Dynamic Drinkware case. And so we're asking the Court to remand for proper analysis of the board's, of patent owners' carryover requirement arguments. In addition, as Your Honor mentioned, we have additional arguments where we raised another issue for the board's refusal to consider a timely raised 101 challenge to the petitioner's alleged patentable claimed invention in the reference. And so, in Appendix 19 through 20, the board rejects, without any analysis, patent owners' argument on Appendix 294 through 296, where that 102E reference claim was submitted for review under the claimed invention requirement. Our legal basis for this argument is the statute's requirement for an invention. In addition, as I discussed earlier in Judge Rich's opinion in Wertheim, that was cited in Dynamic Drinkware, Judge Rich treats the statute's reference to an invention as a requirement to disclose the patentable invention. And so at the end of 537 in Wertheim, Judge Rich states, quote, only an application disclosing the patentable invention before the addition of new matter, which disclosure is carried over into the patent, can be relied upon to give reference disclosure to the benefit of its filing date. And that's at 537 in Wertheim. And so here, Judge Rich characterizes or interprets the word invention to mean a patentable invention. So do I understand right that your view of 102E would require an eligibility analysis of the prior art at issue? A real kind of trial within a trial? Only for the purposes of 102E as it's applied by Dynamic Drinkware. Yes, Your Honor, we would say that. The Post-America Invents Act version of the statute takes some care to use the phrase claimed invention. Why, without, I think, an intent to make a substantive change, but just because it's slightly clarifying of perhaps issues like this one, why wouldn't we understand all of the uses of the term invention that you're relying on to refer to the claimed invention? Thank you, Your Honor. For the purposes of showing entitlement, when you're looking at 102E, you also have to take into account 119E. And that statute uses the words invention claimed. And so that would fall under claimed invention as well. So we ask the Court to remand for proper analysis of the timely raised 101 challenge that was timely raised during the burden shifting analysis under Dynamic Drinkware. Similar to the 2020 real-time case, the Board failed to analyze the reference claim under 101, fails to permit a meaningful appellate review. And so we would ask the Court to remand this. Would your argument apply equally to any other form of potential invalidity for such claims? No, Your Honor, just under this. Just 101? Just under this. I'm sorry, I don't know. I wasn't clear. So your argument is predicated on invalidity or ineligibility under 101. Would that argument be equally applicable if we were to accept it? Would that imply that 102, 103, 112 invalidity arguments would have to be addressed equally? I don't think that that would be the case, Your Honor, because this is a specific instance where we're doing a burden shifting, where they're shifting burdens to show whether we, to show whether or not there's sufficient disclosure under 102E. And so under Dynamic Drink, this would only occur under Dynamic Drinkware. I understand that, but in that context, I guess what I'm trying to get at is, is your argument in some respect limited to 101 problems with the claim? Yes, Your Honor. What's the rationale for distinguishing that form of invalidity or ineligibility from any other? It depends on whether or not there is, you know, reference to any claimed invention, Your Honor. And with that, I'll reserve my time. Okay. Counselor Enos, did I pronounce your name correctly? Enos, yes. Thank you, sir. Good morning, Your Honors, and may it please the Court. I would like to start by flagging that appellant's carryover arguments are not raised anywhere in the blue brief. The PTAB did reject similar arguments below at Appendix 20 to 22. Speak up just a tiny bit. I would like to start by flagging that appellant's arguments about the carryover requirement are not raised anywhere in the blue brief. Appellant's discussion of wartime and real time are not anywhere in either brief. The PTAB did address some of appellant's carryover arguments below. I would direct you to Page Appendix 20 to 22, where the PTAB said that appellant's arguments that the provisional applications had to have sufficient description for the challenged patent were incorrect and a misstatement of the law. Under 119 and dynamic drinkware, the standard is very clear. The provisional applications have to have sufficient written description for the patent that resulted from those applications, not in the challenged patent. And you can see also in their summary of the argument at Page 3 of the blue brief, there is no mention of carryover. They only raise the issue of 101 and whether or not a prior art reference has to be also patent eligible. And we know from Fox Factory, we know from Smith-Klein, that arguments not raised in the opening brief are waived. So appellant has not preserved this challenge and it should not be reached on appeal. Then I'd like to sort of circle back to the substance of what actually was appealed here. This case is about whether in the course of an IPR, the PTAB must reevaluate prior art patents for patent eligibility. The answer is no. Appellant offers no sound basis in statute, precedent, or policy. To start, Portnoy is not the patent issue. Is there any precedent on this issue? On the 101, the question of whether 101 can be raised in this context as a challenge to the application of the consideration of the provisional? No, Your Honor. Dynamic Drinkware applying Section 119 says that the test is written description. It makes no reference to Section 101 or to patent eligibility. And this court subsequently in Amgen made clear that that is the test that Dynamic Drinkware is laying out. But not, I take it, in the context of saying anything about questions, issues of invalidity or ineligibility. No, Your Honor. So there's no precedent directly on point to this particular question that we're addressing, as I understand it. I would say that Dynamic Drinkware is specifically on point because it sets out what the test is and what the standard is for determining whether or not a patent can have the priority date of its provisional application. It says that the standard under Section 119 is Section 112, written description. It clearly sets out that this is the test. It does not say that there is a Section 101 test or a Section 102 test or a Section 103 test. It says that the test is Section 112, and that's created a clear rule for what needs to be. Okay, thank you. So here the PTAB determined that Portnoy is entitled to the priority date of its provisional applications under Dynamic Drinkware's written description test. Appellant does not challenge in its briefing the PTAB's written description finding. The PTAB concluded that Appellant's patent is obvious over Portnoy in combination with other prior art. Appellant does not challenge the substance of the PTAB's obviousness determination, only Portnoy's patent eligibility. Appellant, however, offers no legal basis to support a patent eligibility test for prior art patents or priority date. Indeed, as the PTAB correctly concluded, there is none. First, there's no basis in statute. Appellant cites Section 102E, but Section 102E does not mention, much less create, a patent eligibility test for prior art patents or their priority date. Instead, Section 102E provides that both patents and patent applications, even abandoned applications, can serve as prior art. Second, there is no basis in case law. As we discussed, Dynamic Drinkware sets out a Section 112 written description requirement. This is rooted in clear statutory language, Section 119, and the court's prior precedent, new railhead, which is considering Section 119. Dynamic Drinkware is also consistent with the filing requirements for provisional applications, which need not even have claims, but rather a sufficient written description to show possession of the claimed invention. That's under Section 111. Similarly, Arrowhead sets out the standard for Section 112's written description test. It teaches that disclosure is the hallmark of written description and the quid pro quo of the patent system. Neither case creates a patent eligibility test for prior art, priority date, or written description. As such, without legal basis, appellant must argue from policy, asserting that because Section 102E, Dynamic Drinkware, and Arrowhead emphasize invention, there is an implied patent eligibility test for prior art. Appellant cannot craft such a test from policy arguments. If Congress had intended a patent eligibility test for prior art patents, it would have said so. Nor does the term invention imply a patent eligibility test. By statute, the term invention means invention or discovery. That's under Section 100A. As used in Section 102E, it identifies... This argument was raised before the board, right? About the penability of the prior art. The argument... The argument that he's making today. It was raised before the board, but in a very perfunctory and cursory manner. And my understanding is under Smith-Klein, that an argument raised in a very perfunctory, very cursory manner is not reserved. Other than Drinkware, was there any legal citations made or offered? Ariadne. I believe appellant relied on Ariadne below Drinkware and Ariadne for the proposition. And then for its 101 analysis, appellant relied on Alice and Mayo. So the term invention does not imply a patent eligibility test. As discussed by this court, an invention exists first in the mind of the inventor to be tried and tested through reduction to practice and the patent examination process. Indeed, historically, the term invention is not associated with patent eligibility, but with novelty and non-obviousness, i.e., what an inventor rather than a mechanic could devise based on the prior art. And we see that from the adoption in the 1952 Patent Act going from the judge-made invention or inventiveness requirement to non-obviousness. Further, appellant ignores prior art's actual underlying policy. No one can patent knowledge that is already in the public domain, whether previously patented or not. A written description test with an emphasis on disclosure furthers this policy goal. In contrast, patent eligibility does not. A new abstract idea is still an abstract idea. Last, and even if there were a patent eligibility test for prior art, because Portnoy is a valid issued patent, it has already been found patent eligible by the PTO. Appellant's skeletal Section 101 arguments are not enough to preserve a challenge to that determination, much less overcome the PTO's prior decision. In sum, appellant's challenge is without legal basis and appellee respectfully requests the court affirm the PTAP's final written decision. Is that because under 282, Section 282, that we have a presumption of validity of duly issued patents? My understanding is, yes, under 282, there's a presumption of validity in sales spin. This court said that that includes a presumption of eligibility because eligibility is part of what the PTO has examined in issuing a patent. We also know from Berkheimer that the burden is on the patent challenger to prove patent ineligibility. Berkheimer was in the context of a district court case that was by clear and convincing evidence. It's unclear what the standard would be here as 101 is well outside the scope of the PTAP's jurisdiction. However, yes, it's premised on that presumption and the PTO having already examined and issued a patent and having therefore already found eligibility. If there are no further questions from the panel, I yield the remainder of our time. Thank you very much. Your Honor, I just want to address a couple of arguments. Our arguments are laid out. Are you aware that your argument raises a proposition that's not part of the patent line? I would disagree, Your Honor. You would disagree on the basis of a drinkware, the drinkware case? On the drinkware case, which also cites to N. Ray Wertheim, where Judge Rich treats the recitation of invention in 119E as a claimed invention, Your Honor. Excuse me, as a patentable invention. I'll just read that into the record. It's at 537 in Wertheim. Is this from Wertheim? Yes. What is the volume of FedSecond that that's in? I'm familiar with the case, but I just don't have the volume. 646 FTD 527. All right. And so at 537 in that case, Judge Rich states, only an application disclosing the patentable invention before the addition of new matter, which disclosure carried over into the patent can be relied upon to give a reference disclosure of the benefit of its finding. And then with respect to the presumption of validity, we don't think that that actually is relevant in this case because the board here just didn't address our arguments at all. They just waved their hand at it and said, you know, this isn't the law and so you should, and they didn't actually give a proper analysis on this at all to allow the court for meaningful review. You didn't cite Wertheim to the board, correct? You didn't cite Wertheim to the board? We cited Dynamic Drinkware, which recites Wertheim. You're correct, Your Honor. We did not cite Wertheim. All right. And with that, Your Honor, we'll rest. Thank you. We thank all parties for their arguments today. All cases are taken under advisement. And that concludes today's oral arguments.